IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEO BRISBANE | * | |
| Petitioner | * | |
| v | * | Civil Action No.  JFM-11-3184 |
| STATE OF MARYLAND | * | |
| Respondents | * | |

\*\*\*

## MEMORANDUM

Pending is respondents' answer to the petition for writ of habeas corpus filed pursuant to 28 U.S.C. §2254.  ECF No. 7.  The court finds no need for an evidentiary hearing and shall deny petitioner's motion for a hearing (ECF No. 6).  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2011);  *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)).

## Background

After a jury trial on February 11, 2008, petitioner was convicted of robbery, theft, first and second degree assault and possession of paraphernalia.  The trial took place in the Circuit Court for Charles County, Maryland and concerned events taking place on August 20, 2007, at a Food Lion grocery store located in La Plata, Maryland.  ECF No. 7 at Ex. 1 and 2 at p. 36.  Facts established at trial follow.

Rosetta Speake, a cashier at Food Lion, testified for the state. ECF No. 7 at Ex. 2, pp. 39 – 59.  She explained that she was working the midnight shift on August 20, 2007, which begins at 11:00 p.m. and ends at 7:00 a.m.  *Id.* at p. 41.  It was her habit to check the cash drawer to determine if she needed lower currency before the manager left and the safe was locked.  *Id.*

While she was attempting to place credit card receipts under the drawer, she removed a stack of five dollar bills and laid them by the drawer. *Id*. At that time a man whom she identified as petitioner grabbed the stack of money and Speake grabbed the money at the same time. *Id*. at p. 42. A scuffle ensued and in the process she was pulled out of the kiosk. The manager of the store saw what was happening and assisted Speake, eventually getting petitioner away from her. Speake suffered a compound fracture to her wrist as a result of the struggle. *Id*. at p. 43. She further testified that the money petitioner grabbed belonged to the store and she had not consented to him taking it. Additionally, she stated the store uses video surveillance equipment which was operational on the day in question. *Id*. at p. 44. The video tape of the incident was then played for the jury while Speake verified its depiction of what occurred on the evening in question. *Id*. at pp. 44 – 53.

Joel Edelen, the manager of the Food Lion store, also testified at trial. ECF No. 7 at pp. 60 - 68. He stated that his shift on August 20, 2007, was from 3:00 p.m. to 11:00 p.m., and he was waiting for the relief manager to arrive before leaving. *Id* at p. 61. He stated that he was standing near the office at 11:00 p.m. and noticed a commotion involving a cashier. He identified petitioner as the man he saw in the store attempting to take money from the cashier. *Id*. Edelen testified by the time he got to the area where the struggle was taking place between petitioner and Speake, the two were on the floor. He managed to get petitioner off of Speake and began struggling with him, managing to keep him there until the police arrived. *Id*. at p. 62. Edelen further testified that he instructed another employee, Robert Miller, to call the police and an ambulance, because he noticed Speake's wrist was broken. *Id*. at p. 64. Edelen also verified that video surveillance equipment was operating on the night in question and that the incident was recorded. He verified that the video, which was again played for the jury, was accurate.

The video showed Edelen struggling with petitioner and exiting double doors where petitioner was confined to the floor while police arrived. Edelen explained that the outside doors to the store were locked, preventing petitioner from leaving. *Id.* at pp. 63 – 65. On cross-examination Edelen admitted he did not mention an assault to the police when they arrived at the store and interviewed him. Rather, he told police his concern was to get the money back and to "contain the robber." *Id.* at pp. 69 – 70.

Robert Miller testified that he was employed at the Food Lion as a relief manager on the date in question. ECF No. 7 at Ex. 2, pp. 71 - 74. He stated he began his duties on the evening of August 20, 2007, shortly after 11:00 p.m. and he was going over notes with Edelen regarding what should be accomplished during his shift. *Id.* at p. 72. At that time Miller saw petitioner at the register "grabbing money from the till and/or cashier." *Id.* Miller explained that Edelen went over to confront petitioner and when he followed, Edelen told him to go back and call the police and Miller complied. *Id.* Miller also testified that he observed Speake's wrist, which was misshapen and appeared to be broken, so he called an ambulance. *Id.* at p. 74. On cross-examination Miller admitted he could not discern whether petitioner had grabbed Speake's arm or not. *Id.*

A police officer who responded to the scene, Jeffrey Hitaffer, also testified for the state. ECF No. 7 at Ex. 2. , pp. 75 - 83. Officer Hitaffer was on patrol when he received a call that a suspect had grabbed money from a cashier and injured her in the process. *Id.* at p. 76. When he arrived at the Food Lion he saw Edelen who told him petitioner was the person who had grabbed the money. Officer Hitaffer then detained petitioner and before he could ask petitioner what had occurred, petitioner stated, in an excited manner:

> I only tried to take the money for food. I'm homeless, living out of my car. I'm dying. I have liver disease, gout, and cancer, and I'm hungry. I

3

>did what I had to do. I didn't break that lady's arm. It broke because she is old.

ECF No. 7 at Ex. 2, p. 77. Hitaffer then advised petitioner of his rights and petitioner further stated: "I took the money from the cashier, and she tried to hold on to it. So, I did what I had to do. I'm homeless, hungry and living out of my car." *Id*. at p. 78. Hitaffer asked petitioner where his car was and he said it was a blue Oldsmobile parked in the back of the store. *Id*. At that time petitioner was placed under arrest. *Id*. at p. 80.

Hitaffer also interviewed three witnesses, the Johnsons, who were customers in the store at the time of the incident. While Hitaffer was speaking with the Johnsons in in the parking lot, petitioner, who was in the police car facing the Johnsons in their car, began banging his head against the passenger door window and repeating "don't you testify against me, you bitches, I'll get you." ECF No. 7 at Ex. 2, pp. 80 - 81.

Jessica Johnson and Octavia Johnson were customers in the Food Lion store and also testified for the state.[1] Jessica Johnson stated she saw petitioner and another man struggling in the store after her sister Octavia had taken their mother into the store. She related that the police arrived and handcuffed petitioner, and escorted him out of the store. She testified that while he was being escorted he was mumbling things and appeared to be attempting to "get after me and my sister." ECF No. 7 at Ex. 2, pp. 85 – 86. Octavia Johnson testified that as she pushed her mother's wheelchair into the Food Lion petitioner walked past them and enter the store. She then observed petitioner struggling with a woman on the floor and money lying all over the floor. Upon seeing this, Octavia took her mother back out of the store and out to the parking lot near their truck where they watched "other people struggling with him trying to get him down." *Id*. at

---

[1] Jessica Johnson testified that their mother was with them on the evening in question but at the time of trial she had died. ECF No. 7 at Ex. 2, p. 84.

pp. 87 – 88. Octavia also could not hear what petitioner said after he was removed from the store. *Id.* at p. 89.

Also testifying for the state was Officer Jose Marti, the second officer who responded to a call for a robbery at the Food Lion. ECF No. 7 at Ex. 2, pp. 89 – 93. Officer Marti assisted Hitaffer with handcuffing petitioner and, during that process, heard petitioner state he had attempted to take the money because he was hungry, homeless and living out of his car. *Id.* at p. 91. According to Marti, petitioner also said he was sick, suffering from liver disease, gout and cancer, and that he needed the money for food. In addition, Marti heard petitioner claim that he did not break "the woman's arm, that woman's arm broke because she was too old." *Id.* Marti then talked to Edelen and asked Edelen to show him where the money was located. *Id.* Marti then took photographs of the money and the till. He further testified that the money consisted of 150 dollars in five-dollar bills. *Id.* When Officer Marti returned to the parking lot to talk to the Johnsons he testified that he heard petitioner threaten them, saying "don't testify against me, bitches, or I'll get you." *Id.* at p. 93. The state then rested its case.

Counsel for petitioner made a motion for judgment of acquittal as the charges of robbery and theft, arguing that the evidence established that petitioner never had sole possession of the money since the cashier had it in her hand and then it ended up on the floor. ECF No. 7 at Ex. 2, p. 94. The motion was denied because, in the opinion of the trial court, the evidence supported a finding that petitioner exerted unauthorized control over the money. *Id.* at p. 95.

The jury returned a guilty verdict for robbery, theft and assault. ECF No. 7 at Ex. 2, pp. 119 – 20. In his appeal to the Maryland Court of Special Appeals, petitioner claimed the trial court erred in admitting prejudicial hearsay evidence and that the evidence was not sufficient to sustain a conviction for robbery and theft. ECF No. 7 at Ex. 3. The hearsay evidence

challenged was Hitaffer's statement that he received a radio transmission reporting a strong arm robbery at the Food Lion. *Id.* at pp. 6 and 7. Petitioner also alleged that the state failed to prove that he had obtained complete control of the five-dollar bills for at least an instant because. Speake testified that she grabbed for the money at the same time. *Id.* at pp. 8 and 9.

The Court of Special Appeals rejected petitioner's argument regarding the admission of hearsay evidence because:

> The idea the State was offering the police broadcast for the truth of the thing asserted therein is ridiculous. In typical layman's fashion, the officer was explaining why he responded to the Food Lion. That, of course, would be non-hearsay. In no event, moreover, did what the officer said make an iota of difference. A surveillance tape recording the scene plus six eyewitnesses plus the appellant's spontaneous confession overwhelmingly established that a crime had taken place at the Food Lion. It is not worth anguishing over the technical riddle of whether this was non-error or harmless error, when the indisputable common denominator is that it was not reversible error.

ECF No. 7 at Ex. 5, pp. 3 – 4. The appellate court also found the evidence was sufficient to support a robbery, noting first that common law larceny is a necessary element of robbery. "Robbery is, by definition, larceny by force or threat of force." *Id.* at p. 4. In order to establish a larceny the element of "asportation, the carrying away of the personal goods of another" must be proven. *Id.* After establishing that the degree of asportation required to satisfy the element is "some discernible movement," the Court of Special Appeals noted that:

> We hold that the various references by the witnesses in this case plus the surveillance tape were enough to permit the reasonable inference that it was the degree of force exercised by the appellant that removed the five dollar bills in question from the till where they were initially at rest to the floor of the Food Lion.

*Id.* at p. 5. Petitioner's self-represented petition for writ of certiorari was denied by the Maryland Court of Appeals. ECF No. 7 at Ex. 6.

A post-conviction petition was filed on petitioner's behalf asserting trial counsel was ineffective for having failed to file for a review of sentence by a three-judge panel. ECF No. 7 at Ex. 7. In addition, petitioner raised the following grounds in a self-represented petition:

1. Violation of Constitutional Right – Right to fair trial and appeal of said trial denial of due process of law, prejudice upon appeal of conviction, denied transcript of motion hearing – Md. Rule 4-263(b) information that must be provided upon request. Granted relief for failure to disclose, Pyle v. Kansas, 317 U.S. 213 (1942). State v. Adams, 447 A2d 833, ability to exercise constitutional right must not be <u>chilled</u>! Violation of the Sixth Amendment rights.

2. When a knowledgeable attorney should recognize that the facts support a motion to suppress, failure to make the motion is ineffective assistance. Evans v. State, 151 Md App. 365 (2003), on 2/10/08 defendant appearance waived for motions/readiness conference hearing motions withdraw with prejudice, defendant was said to make a statement before his rights were read. Why were said statements not suppressed?

3. On April 15, 2008 – The day of sentencing, Petitioner's Fifth Amendment of United States Constitution were violated. Nor shall be compelled in any criminal case to be a witness against himself, Article 22, Maryland Declaration of Rights. No man ought to be compelled to give evidence against himself in a criminal case, English v. State, 16 Md. App. 439, 298, and 464 (1973). Palmer v. State, 19 Md 678, 313 and 698 (1974).

4. On April 15, 2008 Sentencing: The court; well you are going to and you are getting fifteen years for it with two hundred and thirty-eight days credit for time served. Time served means just that; <u>time served</u>. The end. The ambiguity leads us to invoke the rule of lenity requiring that the ambiguity be construed against the state and in favor of the inmate . . . The judge did not say to D.O.C. – The judge said time served – the end.

*Id.* at pp. 1 – 2 (emphasis in original). Each of the grounds raised were rejected by the post-conviction court as meritless. *Id.* at pp. 3 – 5. Petitioner's application for leave to appeal was denied by the Maryland Court of Special Appeals. ECF No. 7 at Ex. 8 and 9.

**Claims in this Court**

Petitioner asserts he is entitled to a hearing and requests that his case be remanded to the Circuit Court for Charles County. He attaches a copy of this post-conviction petition asserting

7

the identical claims set forth above. ECF No. 1 at pp. 4 – 6. In addition, petitioner includes correspondence from the Office of the Public Defender responding to his complaint filed with the Attorney Grievance Commission of Maryland regarding trial counsel (*id.* at pp. 7 – 8); a document entitled "The Washington Post Violation of the Constitutional Rights of Leo E. Brisbane"[2] which alleges petitioner is a political prisoner (*id.* at pp. 9 – 10); and a transcript of his sentencing hearing taking place on April 15, 2008 (*id.* at pp. 11 – 20).

## Statute of Limitations

Respondents do not contend -- and the court does not find -- that the petition is time-barred pursuant to 28 U.S.C. §2244(d).

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). This standard is "highly deferential" and "difficult to meet." *Cullen v. Pinholster*, 563 U.S. __, ___, 131 S.Ct. 1388, 1398 (2011); *Harrington v. Richter*, 562 U.S_, ___131 S. Ct. 770, 786 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts

---

[2] This document appears to be something written by petitioner to look like a newspaper article. He states his criminal prosecution was an act of "vindictive prosecution by Jerome R. Spencer" and claims that his trial attorney told him that he was not trying to provide good representation for him. ECF No. 1 at pp. 9 - 10; ECF No. 3. In addition, petitioner claims that Reverend Al Sharpton is filing a "5.7 million dollar law suit for damages caused by the Public Defenders (sic) office." *Id.* There is also an allegation that the Maryland Court of Special Appeals erred when it refused to review petitioner's sentencing transcript and that several news organizations are launching a probe for justice on petitioner's behalf. *Id.* The document reflects a signature line for Shirley Carswell of the Washington Post. *Id.*

in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d).  A state adjudication is contrary to clearly established federal law under  § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1),  a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, _U.S. _, 130 S.Ct. 841, 849 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly.*" Renico v. Lett,* _ U.S_, 130 S. Ct. 1855, 1862 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where

9

the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

**Analysis**

<u>Ineffective Assistance of Trial Counsel</u>

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The second prong requires the court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id.* at 696. "[A] state court conclusion that counsel rendered effective assistance of counsel is not a finding of fact binding on the federal court to the extent stated by [former] 28 U.S.C. § 2254(d)[ now § 2254(e)(1)]." *Id.* at 698. Rather, "although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254[(e) (1)], . . . both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* It follows, then, that §2254(d)(1) applies to the state court's conclusion that the petitioner's trial counsel rendered effective assistance of counsel and this court may not grant

relief on this claim as long as the state court denied the claim based on a reasonable application of the *Strickland* standard to the facts presented in the state court proceeding.

Petitioner's claim that he was denied a fair trial and a fair appeal because he was denied a transcript of a motions hearing (ECF No. 1 at p. 3), is without merit.  The post-conviction court summarily rejected this factually unsupported claim, stating that:

> This allegation is without merit. No evidence has been produced to support any relief.  The defendant makes a bald claim that his rights were violated because of missing transcripts of the motions hearing. The Defendant admits he was present at the motions hearing.  The defendant claims he did not understand his Miranda rights.  The Defendant also claims that he was improperly charged, in that there was insufficient evidence to support a robbery conviction.  This issue was addressed by the Court of Special Appeals in affirming his conviction.

ECF No. 7 at Ex. 8, p. 3.  Petitioner failed to show how a missing transcript impacted on the fairness of his trial.  To the extent petitioner is attempting to assign error to appellate counsel's performance in failing to include in the record the motions transcript, he has failed to state how the transcript was relevant to the issues raised on appeal.  The post-conviction court's analysis of this claim is without error and there is no basis stated for federal habeas relief.

Petitioner's second claim is that trial counsel was ineffective for failing to move to suppress petitioner's statements to the police.  ECF No. 1 at p. 3.  The post-conviction court also rejected this claim as being without merit because the statements made by petitioner were spontaneous utterances which were not made in response to questioning by the police.  ECF No. 7 at Ex. 8, pp. 3 – 4.  Had counsel filed a motion to suppress the statements, the motion would have been denied.[3]  *Id.*  Under *Strickland* there must be "a reasonable probability that, but for

---

[3] Petitioner provides documentation of trial counsel's rationale for not seeking suppression of his statements to the police:
> When the officer arrived, it was alleged that Mr. Brisbane began to blurt statements to the officer, such as that he only did it because he was homeless. When I reviewed the discovery with Mr. Brisbane, I told him that in order to attempt a suppression of the statement, I would have to

11

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The failure to make a frivolous motion or to make ethically improper arguments does not establish that there was an unprofessional error, nor is there even a remote possibility that the result of the trial would have been different had the motion been made. *See also Horne v. Peyton*, 356 F.2d 631 (4th Cir. 1966) (fact that counsel could have done more is insufficient for reversal absent any showing of harmful consequences). Trial counsel's failure to seek suppression of petitioner's statements was not deficient performance and the post-conviction court's conclusion is without error.

Petitioner's claim that his right not to bear witness against himself was violated at the sentencing hearing does not state a claim for federal habeas relief. ECF No. 1 at p. 3. First, a review of the sentencing transcript indicates that petitioner voluntarily spoke at the sentencing proceeding.[4] ECF No. 1 at pp. 15 – 20. The Fifth Amendment privilege against self-incrimination prohibits any person from being "compelled in any criminal case to be a witness against himself." "[T]he privilege protects a person only against being incriminated by his own compelled testimonial communications." *Doe v. United States*, 487 U.S. 201, 207 (1988) *quoting Fisher v. United States*, 425 U.S. 391, 409 (1976). Petitioner was not compelled and his statements were not incriminating, inasmuch as the statements he made were consistent with his

---

>demonstrate that his statements were made in response to questions propounded by the officer. Furthermore, the "statement" did not have to be signed. I told him that if he disagreed with the officer's account of those events, he could testify at a motions hearing that the officer was questioning him, but he never disputed the officer's report and expressed no desire to testify. Furthermore, I thought the blurts would support a possible defense to the top charge, first-degree assault, and perhaps make Mr. Brisbane somewhat sympathetic to the jurors. Due to all of these factors, we did not raise a Fifth Amendment challenge.

ECF No. 1 at p. 7 (letter from trial counsel to Attorney Grievance Commission).

[4] Petitioner essentially attempted to claim he hurt no one during the incident and that he should not have to "go down for that" when he did not tell Speake to resist his attempts to take the money. He admitted trying to steal the money but denied he had committed a robbery. ECF No. 1 at pp. 15 – 20. For purposes of the sentencing proceeding, the robbery and theft were merged and petitioner's guilt had already been determined by the jury.

12

defense at trial. The post-conviction court's rejection of this claim as being factually unsupported is without error.

Petitioner's claim that there was an ambiguity in the way his sentence was imposed does not state a basis for federal habeas relief as it relies solely on state law. ECF No. 1 at p. 3. "[H]abeas relief may be afforded to a state prisoner 'only on the ground' that his custody violates federal law." *Wilson v. Corcoran*, __ U.S. __, 131 S. Ct. 13, 17 (2010) *quoting* 28 U.S.C. §2254(a). Petitioner relies entirely on the "rule of lenity" to support his claim that when the trial judge said "time served" he created an ambiguity in the sentence and it should be construed in petitioner's favor. ECF No. 1 at p. 3; *see White v. State*, 318 Md. 740, 744, 569 A. 2d 1271 (1990) (rule of lenity is a principle of statutory interpretation which requires ambiguities as to whether the legislature intended multiple punishments for the same act or transaction will be resolved against turning a single transaction into multiple offenses); *see also Robinson v. Lee*, 317 Md. 371, 378, 564 A. 2d 395, 398 (1989) ("consecutive to sentence now serving" language during sentencing construed to mean only the single sentence being served at the time of sentencing and not consecutive sentences following). In any event, the post-conviction court's rejection of petitioner's claim as "nonsensical and without merit" because there "was no ambiguity in the court's sentence" is without error. ECF No. 7 at Ex. 8, p. 4. The fact that the trial court gave petitioner credit for time served, as it is required to do, did not make the fifteen year sentence imposed ambiguous. The claim fails to state a basis for federal habeas relief.

## Conclusion

Upon review of the petition for writ of habeas corpus, the response along with the exhibits submitted, as well as Petitioner's reply, this court determines that petitioner is not entitled to federal habeas relief. There is no basis upon which to find constitutional deficiencies in the state

court proceedings, petitioner having failed to rebut the presumption of correctness of the findings of fact underlying the rejection of his grounds for post-conviction or appellate relief. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U. S.C. § 2253(c)(2). The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied. *See* 28 U. S.C.§ 2253(c)(2).

    Accordingly, the petition shall be dismissed with prejudice by separate order which follows.

___May 21, 2012_____             ___/s/_____
Date             J. Frederick Motz
                                               United States District Judge